UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil Action No. _____ |
| *ex rel.* [UNDER SEAL], | Hon. _____ |
| Plaintiff, | QUI TAM COMPLAINT |
| v. | |
| [UNDER SEAL], | FILED UNDER SEAL UNDER 31 U.S.C. § 3730(b)(2) |
| Defendants. | JURY TRIAL DEMANDED |

JUDGE CROTTY

23 CV 08920

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* AIDAN FORSYTH, <br><br> Plaintiff-Relator, <br><br> v. <br><br> COOLING GUARD MECHANICAL CORPORATION and MICHAEL CARRONE, <br><br> Defendants. | Civil Action No. _____ <br><br> Hon. _____ <br><br> **QUI TAM COMPLAINT** <br><br> **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> **JURY TRIAL DEMANDED** |

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Aidan Forsyth ("Relator") files this *qui tam* action against Defendants Cooling Guard Mechanical Corporation ("CGMC") (the "Corporate Defendant") and Michael Carrone ("Carrone") (the "Individual Defendant") (collectively, "Defendants"), and alleges as follows:

## INTRODUCTION

1. This is an action to recover treble damages, civil penalties, and all other remedies on behalf of the United States of America in connection with the Defendants' materially false and fraudulent applications to the Government for loans under the Paycheck Protection Program ("PPP") in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

2. Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims for payment that Defendants submitted or caused to be submitted to the Federal Government-funded and/or subsidized PPP loan program.

## SUMMARY OF ALLEGATIONS

3. Defendant Carrone is, and at all times relevant to this Complaint was, the President and Principal Owner of Defendant CGMC.

4. CGMC is a New York-based corporation specializing in heating and air conditioning services.

5. Upon information and belief, Carrone at all times relevant to this Complaint had a 20% or greater equity interest in CGMC.

6. In or about December 2018, Carrone and several others were indicted on state felony charges of conspiracy, bribery, money laundering and other frauds in connection with a commercial bribery and bid-rigging scheme in Manhattan.

7. In or about June 2019, Carrone pled guilty to first-degree commercial bribery and on May 20, 2021, he was sentenced to three years' probation.

8. In or about October 2020, Carrone was charged with federal felony tax offenses in this District.

9. In or about December 2020, Carrone pled guilty to a violation of Title 18, US Code, Section 371.

10. In or about December 2021, Carrone was sentenced to five years' probation with a six-month term of house arrest and ordered to pay $546,323.94 in restitution to the IRS.

11. In or about April 2020, after being indicted and/or convicted for committing a felony in or about 2018, CGMC submitted a Small Business Administration ("SBA") application for a PPP loan.

12. In or about April 2020, CGMC obtained its first PPP loan.

13. By in or about May 2021, CGMC sought and obtained forgiveness for the first PPP loan.

14. In or about March 2021, after Carrone was sentenced to probation, CGMC submitted a second SBA application for a PPP loan.

15. In or before March 2021, CGMC obtained its second PPP loan.

16. By in or about November 2021, CGMC sought and obtained forgiveness for the second PPP loan.

17. Upon information and belief, Carrone prepared and executed the loan applications as CGMC's authorized representative, or caused another person to prepare and execute them as CGMC's authorized representative.

18. In these applications, Defendants falsely stated and certified that no owner of CGMC with an equity interest of more than 20 percent had been "subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole." They also expressly acknowledged that this was a material question, and that submitting a materially false application would violate federal law.

19. In reliance on these false statements and certifications, a lender extended a PPP loan to CGMC for a total of nearly $1.1 million.

20. In further reliance on Defendants' false statements and certifications, the lender forgave the PPP loans, the reimbursement for which cost the United States approximately $1.1 million.

21. Relator files this *qui tam* lawsuit to enable the Government to recover from Defendants the SBA-guaranteed and forgiven monies that were provided to Defendants as the result of their wrongdoing, as well as to recover treble damages and/or penalties.

## JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS

22. This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by the United States of America.

23. In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because the Defendants transact business in this District, and because the PPP Loan application was prepared in, executed in, and/or submitted to the SBA from this District.

24. Venue is proper in this District under 31 U.S.C. § 3732(a) because certain of the acts complained of herein occurred in this District.

25. In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has filed been filed *in camera* and will remain under seal for a period of at least 60 days and shall not be served on the Defendants until the Court so orders.

26. Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in his possession contemporaneous with the filing of the Complaint. Relator has complied with this provision by serving copies of the Complaint and such disclosure upon the

4

Honorable Damian Williams, United States Attorney for the Southern District of New York, and upon the Honorable Merrick B. Garland, Attorney General of the United States.

27. Relator is not aware that the allegations in this Complaint have been publicly disclosed. In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" since he has voluntarily provided his information to Government before filing this Complaint, and has knowledge which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

## PARTIES

28. Plaintiff/Relator Aidan Forsyth resides at 55 West 8th Street, New York, NY 10011.

29. Defendant Cooling Guard Mechanical Corporation is a privately held company that was incorporated in the State of New York on or about September 30, 2005. Its principal place of business is located at 6822 Eliot Ave Middle Village, NY, 11379-1194.

30. CGMC offers commercial HVAC installation, maintenance, and repairs along with 24-hour emergency service.

31. CGMC is a "Top Rated Commercial HVAC Contractor in NYC" since 1995, which provides air conditioning and heating services to major Fortune 500 Corporations, Hotels, Buildings, Retail Chains and preferred customers in the New York metropolitan area.

32. CGMC advertises that every one of its technicians is thoroughly trained in every aspect of the HVAC service spectrum in order to provide reliable support.

33. Defendant Michel Carrone resides at 156-35 89th St, Jamaica, NY 11414. He was the Principal Owner and President of CGMC since 2005 and remains the President today.

34. Upon information and belief, Carrone has and/or at all times relevant to this Complaint had, at least a 20% equity ownership interest in CGMC.

## GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT

### The False Claims Act

35. Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

36. The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions or conspired to have violated these provisions is liable for a civil penalty of not less than $12,357.00 or more than $27,018.00 per claim plus three times the amount of the damages sustained by the Government, as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see also* 88 FR 5776, Jan. 30, 2023).

37. The FCA defines the terms "knowing" and "knowingly" to mean that a person (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or acts "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The statute provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b)(1)(B).

38.     The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

39.     The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

40.     In this action, and under well-established precedent, the false and fraudulent nature of Defendants' conduct is informed or measured by their violation of, or failure to comply with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

**The CARES Act Authorizes Paycheck Protection Program Loans and Economic Injury Disaster Loans and Grants**

41.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) (the "CARES Act" or the "Act") was enacted in March 2020 to provide emergency financial assistance to individuals and businesses affected by the COVID-19 pandemic. The Act provided the federal Small Business Administration ("SBA") with funding and authority to modify existing

7

loan programs and establish a new loan program to assist small businesses adversely affected by the pandemic.

42. Section 1102 of the CARES Act authorized the SBA to guarantee up to $349 billion in forgivable 7(a) loans to small businesses for job retention and other expenses. This program was called the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized over $300 billion to additionally fund the PPP. In June 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) was enacted which changed certain provisions of the PPP, including provisions relating to the maturity of loans, the deferral of loan payments, and loan forgiveness.

43. Under the PPP, eligible businesses could obtain *one* SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

44. The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. To obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

45. The borrower's authorized representative must certify, among other things, the business's average monthly payroll expenses and number of employees. This information is used to calculate the amount of money the business is eligible to be loaned. The applicant must also submit documentation showing payroll expenses, among other things.

46. In the original version of the PPP loan application (SBA Form 2483, effective April 2, 2020), Question 5 required the authorized representative to certify that no owner of the applicant (defined as a person having more than a 20% equity interest in the entity) had been "subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole."

47. The application stated that if Question 5 were answered "Yes," the loan would not be approved.

48. The application further required the applicant's representative to "certify in good faith . . . that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

49. PPP loan applications were processed by participating financial institutions, which served as the lenders. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan. SBA paid processing fees to lenders.

50. Once a borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, the lender submitted the application to SBA for an SBA loan number and after receiving that number it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

51. A borrower was required to use PPP loan proceeds only for certain permissible expenses: payroll costs, interest on mortgages, rent and utilities. The PPP allows the interest and

principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expenses within a designated period (between eight and 24 weeks from receiving the proceeds) and uses at least 60% of the proceeds for payroll expenses.

## SPECIFIC FRAUD ALLEGATIONS

### Carrone is Indicted, Convicted and Sentenced for Felonies from 2018 and 2020

52. In or about December 2018, Carrone was indicted and/or convicted for involvement in a bribery and fraud scheme in New York County.

53. In or about December 2018, Carrone and 13 others were indicted by the Manhattan District Attorney's Office on charges of conspiracy, bribery, money laundering and other frauds in connection with a scheme to steer construction projects and inflate costs for Bloomberg LP.

54. In or about June 2019, Carrone pled guilty to first-degree commercial bribery and on May 20, 2021, he was sentenced to three years' probation.

55. On or about October 21, 2020, Carrone was subject to an indictment and arraignment for a felony, specifically Conspiracy to Defraud the United States, in this District. *See United States v. Carrone,* Case No. 1:20-cr-00561 (S.D.N.Y).

56. In or about December 2020, Carrone pled guilty to a violation of Title 18, U.S. Code, Section 371.

57. In or about December 2021, Carrone was ordered to pay $546,323.94 in restitution to the Internal Revenue Service (IRS) and sentenced to 5 years' probation with a six-month term of house arrest.

## CGMC Applies for and Receives its First PPP Loan, which is Later Forgiven

58. In or about April 2020, Carrone prepared or caused to be prepared an SBA application for a PPP loan (using the original SBA Form 2483 effective April 2, 2020) on behalf of CGMC to TD Bank, National Association ("TD Bank"), a federally insured financial institution based in Wilmington, DE.

59. Question 5 required the authorized representative to certify that no owner of the applicant (defined as a person having more than a 20% equity interest in the entity) had been "subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole." The application stated that if this question were answered "Yes," the loan would not be approved.

60. The application required the applicant's representative to "certify in good faith . . . that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

61. Upon information and belief, Carrone executed CGMC's PPP loan application as the company's authorized representative, or caused another person to execute the application as the authorized representative.

62. Upon information and belief, after being indicted and/or convicted of a felony in or around December 2018, Carrone falsely answered or caused to be answered "No" to Question 5 in the loan application, and initialed or caused to be initialed Question 5 to confirm this false response.

63.     Upon information and belief, Carrone falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

64.     In or about April 2020, Carrone submitted or caused to be submitted CGMC's PPP loan application to TD Bank.

65.     On or about April 28, 2020, TD Bank issued PPP Loan #1666637301 to CGMC in the amount of $564,400.33 (the "301 Loan").

66.     On or about May 20, 2021, the 301 Loan was forgiven in full, causing the United States to reimburse TD Bank for the full amount plus interest, costs, and fees.

**CGMC Applies for and Receives its Second PPP Loan, which is Later Forgiven**

67.     In or about March 2021, after Carrone was sentenced to probation, he prepared or caused to be prepared an SBA application for a PPP loan (using the SBA Form 2483 Version 9, effective on March 3, 2021)[1] on behalf of CGMC to TD Bank.

68.     Question 6 required the authorized representative to certify that no owner of the applicant (defined as a person having more than a 20% equity interest in the entity) "[w]ithin the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, has…1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)." The application stated that if this question were answered "Yes," the loan would not be approved.

---

[1] Whether Defendants used the SBA Form 2483 Version 9 or Version 10, effective March 18, 2021, is immaterial as the language of Question 6 was the same, as would be Defendants' materially false answer.

69. The application required the applicant's representative to "certify in good faith . . . that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

70. Upon information and belief, Carrone executed CGMC's PPP loan application as the company's authorized representative, or caused another person to execute the application as the authorized representative.

71. Upon information and belief, Carrone answered or caused to be answered "No" to Question 5 in the loan application, and initialed or caused to be initialed Question 5 to confirm this false response.

72. Upon information and belief, Carrone falsely certified or caused to be certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" while acknowledging that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law" as a federal felony.

73. In or about March 2021, Carrone submitted or caused to be submitted CGMC's PPP loan application to TD Bank.

74. On or about March 10, 2021, in reliance on Defendants' materially false and fraudulent representations and certifications in the loan application, TD Bank issued PPP Loan #8479698507 to CGMC in the amount of $498,265.05 (the "507 Loan").

75. On or about November 18, 2021, the 507 Loan was forgiven in full, causing the United States to reimburse TD Bank for the full amount plus interest, costs, and fees.

## THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF DEFENDANTS' CONDUCT

76. Defendants' materially false statements have caused the federal government to be defrauded of taxpayer funds in the approximate amount of $1,062,665.38.

## CLAIMS FOR RELIEF

### COUNT I

False Claims Act:
Presenting or Causing to be Presented False and Fraudulent Claims
31 U.S.C. § 3729(a)(1)(A)

77. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

78. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

### COUNT II

False Claims Act:
Making or Using False
Records or Statement to Cause Claims to be Paid
31 U.S.C. § 3729(a)(1)(B)

79. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

80. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly made, used, or caused to be made or used, false records or statements – *i.e.*, the false representations made or caused to be made by Defendants – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

## COUNT III

False Claims Act:
Conspiracy
31 U.S.C. § 3729(a)(1)(C)

81. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

82. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants conspired with and among each other, and with others, to make or present false or fraudulent claims, and performed one or more overt acts to effect the submission and cause the payment of false or fraudulent claims.

## DEMANDS FOR RELIEF

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against the Defendants, ordering that:

A. That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B. That judgment be entered in Relator's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than $12,357.00 or more than $27,018.00 per claim, as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see also* 88 FR 5776, Jan. 30, 2023), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

C. That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

D.  That judgment be granted for Relator against Defendants for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E.  That Relator be granted such other and further relief as the Court deems just and proper.

## TRIAL BY JURY

Relator hereby demands a trial by jury as to all issues.

DATE:  October 11, 2023

SPIRO HARRISON & NELSON

Eric H. Jaso
363 Bloomfield Avenue
Second Floor
Montclair, NJ 07074
(973) 232-0881
ejaso@spiroharrison.com

*Attorneys for Relator*